IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICARDO MOLINA, | ) | |
| Petitioner, | ) | Civil Action No. 10-133 Erie |
| | ) | |
| v. | ) | District Sean J. McLaughlin |
| | ) | Magistrate Judge Susan Paradise Baxter |
| ARCHIE B. LONGLEY, | ) | |
| Respondent. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.    RECOMMENDATION**

It is respectfully recommended that the petition for a writ of habeas corpus (ECF No. 4) filed by federal prisoner Ricardo Molina be denied and that this case be closed.

**II.    REPORT**

Pending before the Court is a petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2241 by Ricardo Molina. He challenges a disciplinary action taken at the Federal Correctional Institution, McKean, in connection with Incident Report No. 1938296, which was issued on November 2, 2009. Petitioner claims that his due process rights were violated because he was not permitted to review the videotape the Discipline Hearing Officer ("DHO") relied upon to support a finding that he had committed the charged violations. He also contends that the DHO who heard his case was not qualified to preside over his hearing. As relief, he seeks the restoration of the good conduct time disallowed by the DHO as a result of the disciplinary action.

1

**A.      Relevant Background**[1]

On November 2, 2009, Incident Report No. 1938296 was issued charging Petitioner with Conduct Which Disrupts and/or Interferes with the Security and Orderly Running of a Bureau of Prisons Facility and Refusing to Obey the Order of Any Staff Member, in violation of Codes 199 and 307. (ECF No. 12-1 at 17-20, Resp's Ex. 2a, Incident Report No. 1938296). In Section 11 of the Incident Report, Special Investigations Supervisor ("SS") Lt. D. Bailey wrote:

> At the conclusion of an SIS investigation completed on October 8, 2009, it was determined inmate Molina, Ricardo, Reg. No. 59627-053, participated in a large scale group disturbance involving approximately 212 inmates on the recreation yard at FCI McKean on September 23, 2009, beginning at 2:45 p.m., and concluding at 2:49 p.m. **A review of the video surveillance records** shows a large group of Surenos and Paisa inmates meet at each end of the outside basketball courts. Once they complete their group discussion the two groups then meet in the center of the basketball courts for a few moments and charge off attacking all African American inmates with rocks, pieces of concrete, broken broom handles, broken pool sticks, pool balls, bocci balls, and various other items. Staff present on the recreation yard immediately begin to order all inmates to cease their actions and lie on the ground, however, the inmates refuse the orders and continue the assaultive actions. Those inmates that did not want to be involved in this disturbance separated themselves by going to the softball fields and other leisure areas. The African American and Hispanic inmates continued assaulting each other with the improvised weapons until responding staff arrived and began utilizing less lethal munitions. The inmates then began to cease their actions and lie on the ground. **Inmate Molina, Ricardo, Reg. No. 59627-053, was identified by staff as an active participant running around the recreation yard chasing black inmates.**
>
> This incident report was written on November 2, 2009, at 8:00 a.m., because of the time constraints created by the abundance of incident reports that also needed to be completed following the disturbance.

(Id. at 18 (emphasis added)).

The Incident Report was delivered to Petitioner on November 2, 2009. (Id.) Upon delivery, an investigation was conducted. Petitioner was advised of his right to remain silent during the disciplinary

---

[1]      Respondent has filed the relevant records and they are docketed at ECF No. 12-1 through 12-3. This Court finds that citing to the page number contained in the CM/ECF header is the most efficient way to cite to specific pages contained in the record and therefore that is the method used herein.

2

process. After the Incident Report was read to him, Petitioner indicated that he understood the charges against him and stated: "The officer told me to get down and I got down." (Id. at 20).

The Investigating Lieutenant gathered memoranda submitted by two staff members. One was Lisa McKenna. She stated:

> On September 23, 2009, at approximately 2:50 p.m., I responded to a call for assistance on the recreation yard at FCI McKean. When I arrived I found a large scale disturbance had occurred between groups of Hispanic and African American inmates. Once the disturbance was brought under control all inmates were ordered to lay on the ground and placed in flex cuffs in the exact location they were in at the conclusion of the incident. I was assigned the task of identifying each inmate and the location they were in. **The following inmates were found on or in the immediate vicinity of the basketball court courts: … Molina, Ricardo Reg. No. 59627-053.**

(Id. at 21 (emphasis added)).

The second memorandum was submitted by D.J. Whitmore, Recreation Specialist. He stated:

> On Wednesday, September 30, 2009, I reviewed the video footage of the inmate disturbance that took place on September 23, 2009. From the video footage I was able to positively identify the following inmates: [names redacted] were throwing rocks at other inmates. Also, I identified inmates [names redacted], that were striking other inmates with a closed fist. Furthermore, I was able to identify the following inmates: [name redacted], **Molina # 59627-053**, [name redacted], and [name redacted] **as participants that were actively running and chasing black inmates.**

(Id. at 23 (emphasis added)).

At the conclusion of the investigation, the Investigating Lieutenant referred the Incident Report to the Unit Discipline Committee ("UDC") for an initial hearing. (Id. at 20). On November 3, 2009, the UDC convened for an initial hearing. Petitioner stated that he was not involved in the incident. (Id. at 19). At the conclusion of the hearing, the UDC referred the Incident Report to the DHO for final disposition.

Petitioner was advised of his rights at the DHO Hearing. (ECF No. 12-1 at 24-25, Resp's Ex. 2b, Inmate Rights at Discipline Hearing). Petitioner requested that D.J. Whitmore appear at the hearing as a

3

witness in order to testify that he (Petitioner) complied with the order to stay down. (ECF No. 12-1 at 27, Resp's Ex. 2c, Notice of Discipline Hearing Before the DHO).

The DHO hearing was held on November 9, 2009, at FCI McKean. Laura Lechien was the DHO. Petitioner told her: "I was there by the basketball court but I didn't do anything." (ECF No. 12-2 at 2, Resp's Ex. 2d, DHO Report).

The DHO noted that in reaching her findings, she considered the Incident Report, Petitioner's oral statement, the memorandum submitted by D.J. Whitmore, who was Petitioner's requested witness, the memorandum submitted by Lisa McKenna, and the SIS report dated October 8, 2009.[2] (Id. at 3). She determined that Petitioner committed the prohibited acts as charged, and summarized her findings as follows:

> Your due process rights were reviewed with you by the DHO at the time of the hearing. You stated you understood your rights, had no documentary evidence to present, requested no staff representative, and requested Mr. Whitmore as a witness. You indicated you were ready to proceed with the hearing.
>
> The DHO finds you committed the prohibited acts of Conduct Which Disrupts and Interferes with the Security and Orderly Running of a BOP Facility, code 199 (most like Rioting, Code 105), and Refusing an Order of Any Staff Member, code 307.
>
> The DHO basis [sic] this finding on the reporting officer's written account that at the conclusion of an SIS investigation, it was determined you participated in a large scale group disturbance involving approximately 212 inmates on the recreation yard at FCI McKean on September 23, 2009. A review of the video surveillance records show a large group of Surenos and Paisa inmates met at each end of the basketball courts. Once they completed their group discussion, the two groups then met in the center of the basketball courts for a few moments and charged off attacking all African American inmates with rocks, pieces of concrete, broken broom handles and pool sticks, pool balls, bocci balls, and various other items. Staff present on the recreation yard immediately began to order all inmates to cease their actions and lie on the ground, however, the inmates refused the orders and continued the assaultive actions. Inmates that didn't want to be involved separated themselves by going to the softball fields and other leisure areas. The African American and Hispanic inmates continued assaulting each other with the

---

[2] The SIS report is at ECF 12-2 at 9-36. Petitioner is identified in that report as being one of the inmates involved in the incident.

improvised weapons until responding staff arrived and used less lethal munitions. Inmates then began to cease their actions and lie on the ground. All inmates on the recreation yard were placed on the ground and flexed cuffed in the exact location they were found at the conclusion of this disturbance. Those inmates not involved remained isolated on the softball field and other leisure areas. All inmates were then positively identified by a staff member in the exact location they were found. Video surveillance, and positive staff identification, indicates you were found on or in the immediate vicinity of the basketball courts with a group of inmates that had refused staff orders and actively participated in this violent incident. You were also identified by staff as an active participant running around the recreation yard chasing black inmates.

You denied the charge and presented as your defense that you were there by the basketball court, but you didn't do anything. You requested Mr. Whitmore as a witness at your DHO hearing. Mr. Whitmore wrote a supporting memorandum and his knowledge of the incident is adequately summarized in section 11 of the incident report and in his supporting memorandum. I considered him an adverse witness and therefore, did not call him as a witness at your DHO hearing. The DHO gave little weight to your defense as you failed to present any documentary evidence or witness testimony to support your defense. The DHO gave greater weight to the officer's written statement that you were positively identified by a staff member on or in the immediate vicinity of the basketball courts with a group of inmates that had refused staff orders. Videotape recordings of the incident document that in the minutes prior to the start of the disturbance there was a large group of Hispanic inmates on the basketball court, however no inmates were observed playing basketball. As the incident starts, all the inmates who were on the ground in the basketball court started to run in different directions, chasing after African American inmates. The video also show that all the inmates who ended up being secured on the ground in the basketball court area, had been observed on video running in different directions chasing other inmates. You were seen by a staff member running and chasing black inmates. All the inmates in this area were observed refusing numerous staff orders to get down on the ground and stay there. The video tape recording of the incident also shows non-participants of this incident chose to depart to other areas of the recreation department. You had the opportunity to leave the area you were in; however, you chose not to. The conduct you participated in is certainly disruptive to the good order and security of the institution and threatens the safety of all staff and inmates alike. Therefore, in my best judgment, your behavior during this incident is properly defined as violation of prohibited acts of Code 199, Conduct Which Disrupts the Orderly Running of the Institution, in the Greatest category of offenses, most like Code 105, Rioting and Code 307, Refusing an Order.

(Id. at 3-4).

After determining that Petitioner violated Codes 199 and 307, the DHO imposed the following relevant sanctions: (1) the disallowance of 31 days good conduct time; and, (2) the forfeiture of 30 days non-vested good conduct time. (Id. at 4).

Petitioner challenged the disciplinary action against him through the Bureau of Prisons ("BOP") Administrative Remedy Process. He complained, as he does in the instant action, that his due process rights were violated because he was not permitted view the videotape that the DHO had referenced in her report. On June 1, 2010, Harrell Watts, Administrator, National Inmate Appeals, denied Petitioner's administrate appeal. He explained:

> We reviewed the disciplinary proceedings affiliated with IR number 1938296 and concluded the DHO considered the evidence and statements presented. Evidence also indicates you had ample opportunity to vacate the vicinity, as had many other inmates to avoid involvement in the incident. You opted to remain in the area and were positively identified as an active participant. The DHO relied upon its greater weight, as detailed in Section V of the DHO report, to support the decision.
>
> With respect to the requirements of Program Statement (PS) 5270.07, _Inmate Discipline and Special Housing Units_, we conclude the staff adhered to the requirement for considering evidence and administering and preserving your due process rights. There are not any provisions for you to question witnesses or staff, nor are there any permitting your personal review of evidence, staff memorandums, or investigative summaries. Staff representatives generally fulfill this function. Yet, according to the record, you declined such representation. You also contend the time frame in which the IR should have been written expired. Given the scale of the incident in question and the lengthy process of sorting through its details, the IR was issued as required, upon completion of the investigation. Following our review of the record, we find the determination, based on the evidence considered, a reasonable and logical conclusion. The sanctions imposed were appropriate and consistent with the parameters identified in Chapter 4 of the PS. Your appeal is denied.

(ECF No. 12-1 at 13, Resp's Ex. 1b, Administrative Remedy Case Number 565578).

Upon the competition of his administrative appeal, Petitioner commenced habeas proceedings in this Court. Respondent has filed an Answer (ECF No. 12) and the relevant record. Petitioner has filed a Reply (ECF No. 13).

6

### B. Discussion

### 1. Petitioner Was Not Deprived Of Due Process

This Court's analysis of Petitioner's due process claim must begin with the United States Supreme Court's decision in <u>Wolff v. McDonnell</u>, 418 U.S. 539 (1974), which is the seminal case concerning the due process rights of federal prisoners during disciplinary proceedings. In that case, the Supreme Court noted that a prisoner's accumulation of good time credits, which can affect the length of his incarceration, may give rise to a constitutionally protected liberty interest. <u>Wolff</u>, 418 U.S. at 556-57. However, the Supreme Court noted further that this does not entitle prisoners to the full panoply of rights afforded a defendant in a criminal prosecution when these credits are forfeited pursuant to a prison disciplinary proceeding. <u>Id.</u> Instead, a prisoner is entitled only to procedures sufficient to ensure that the protected interest (<u>i.e.</u>, good time credit) "is not arbitrarily abrogated." <u>Id.</u> at 557.

In <u>Wolff</u>, the Supreme Court enumerated the following five procedural safeguards that are required in a prison disciplinary proceeding: (1) the right to appear before an impartial decision-making body; (2) written notice of the charges 24 hours in advance of the disciplinary hearing; (3) an opportunity to call witnesses and present documentary evidence, provided the presentation of such does not threaten institutional safety or correctional goals; (4) assistance from an inmate representative if the charged inmate is illiterate or if complex issues are involved; and (5) a written decision by the factfinder as to the evidence relied upon and the rationale behind the disciplinary action. <u>Id.</u> at 563-72.

The BOP also has established regulations that set forth the procedures for disciplinary actions. These regulations track the requirements set forth in <u>Wolff</u>, and in some respects exceed the required process set forth in that case. <u>See</u> 28 C.F.R. §§ 541.10-22 (2009). When BOP staff consider informal resolution of an inmate violation of BOP rules and regulations to be inappropriate, an incident report must be prepared. Staff must investigate the incident promptly, unless circumstances beyond the control

of the investigator intervene. Additionally, staff shall give each inmate charged with violating a BOP rule a written copy of the charge(s) against him or her at the beginning of the investigation and ordinarily within 24 hours of the time staff become aware of the inmate's involvement in the incident. 28 C.F.R. §§ 541.14-15 (2009).

Upon the completion of the investigation, the incident report may be referred to the UDC for an initial hearing. Ordinarily, the initial hearing shall be held within three work days from the time staff became aware of the inmate's involvement in the incident. However, the UDC may extend time limits set forth in the regulations for a good cause shown by the inmate or staff. 28 C.F.R. § 541.15 (2009).

After the hearing, the UDC may either reach a finding as to whether a prohibited act was committed or refer the case to the DHO for further hearing. The regulations provide an inmate with the following rights before the DHO: (1) no less than 24 hours advance written notice of the charges; (2) a full time staff member to represent him at the DHO hearing; (3) the opportunity to make a statement and to present documentary evidence and witnesses; (4) the right to be present through the DHO hearing; (5) the right to have the DHO consider all evidence presented at the DHO hearing; and (6) the right to a written report of the DHO's findings, the DHO's decision, and the specific evidence relieved upon by the DHO. 28 C.F.R. § 541.17 (2009).

Petitioner has failed to establish that he was denied any process due to him under the Due Process Clause or applicable BOP regulations. Although he requested that D.J. Whitmore testify as a witness, the DHO denied that request after determining that he would be adverse to Petitioner's defense and because he had provided a written statement detailing his review of the videotape of the incident. The DHO's decision was in accordance with 28 C.F.R. § 541.17(c) (2009), which provides that the DHO need not call adverse witnesses if their knowledge of the incident is adequately summarized in the Incident Report and other investigative materials supplied to the DHO.

8

Petitioner's challenge to the qualifications of the DHO also lacks merit. BOP regulations provides the following:

(a) Each Bureau of Prison institution shall have an independent hearing officer (DHO) assigned to conduct administrative fact-finding hearings covering alleged acts of misconduct and violations of prohibited acts, including those acts which could result in criminal charges.... If the institution's DHO is not able to conduct hearings, the Warden shall arrange for another DHO to conduct the hearings. This person must be trained and certified as a DHO, and meet other requirements for DHO.

(b) In order to insure impartiality, the DHO may not be the reporting officer, investigating officer, or UDC member or a witness to the incident or play any significant part in having the charge(s) referred to the DHO.

(c) The Discipline Hearing Officer shall conduct hearings, make findings, and impose appropriate sanctions for incidents of inmate misconduct referred for disposition following the hearing required by § 541.15 before the UDC. The DHO may not hear any case or impose any sanctions in a case not heard and referred by the UDC. Only the Discipline Hearing Officer shall have the authority to impose or suspend sanctions A through F.

28 C.F.R. § 541.16(a)-(c) (2009).

In this case, the DHO who heard Petitioner's case was a trained and certified DHO. (ECF No. 12-3 at 38, Resp's Ex. 2e, Lechien's DHO Certification). In addition, she was not the reporting officer, investigating officer, a member of the UDC, a witness to the incident, nor did she play any significant part in having the charge(s) referred to the DHO.

Petitioner also argues that his due process rights were violated because the DHO considered a videotape (or, more specifically, D.J. Whitmore's summarization of what he had seen on the videotape), which he was not permitted to review. In response to this argument, Respondent contends that Petitioner had no right to review the videotape. Respondent cites to 28 C.F.R. § 541.14(b)(2) (2009),[3] which provides:

---

[3] According to Respondent, this regulation is set forth in one of the Program Statements that was provided to Petitioner upon his admission to FCI McKean.

9

> The investigator shall record all steps and actions taken on the Incident Report and forward all relevant material to the staff holding the initial hearing. **The inmate does not receive a copy of the investigation. However, if the case is ultimately forwarded to the Discipline Hearing Officer, the DHO shall give a copy of the investigation and other relevant materials to the inmate's staff representative for use in presentation on the inmate's behalf.**

(Emphasis added).

Respondent asserts that legitimate security concerns supported the decision not to permit Petitioner to view the videotape of the incident, because, for example, "viewing the tape would indicate the location of hidden cameras and would enable [him] to locate 'blind spots' in the area covered by the cameras." Pinet v. Holt, No. 1:07-cv-1766, 2008 WL 3837214, *2 (M.D. Pa. Aug. 13, 2008), aff'd 316 F.App'x 169, 171-72 (3d Cir. 2009) ("Although due process in this context requires that an inmate have an opportunity to present evidence, that right may [be] trumped by a legitimate security concern, such as the one presented in this case."). It is true that the discretion afforded prison officials in making decisions such as the one at issue here "is not without limits[,]" however, their discretion "is quite broad" and Petitioner's right in this case to produce evidence in his defense is limited "by the demands of prisoner safety and institutional order[.]" Young v. Kann, 926 F.2d 1396, 1400 (3d Cir. 1991). See id. at 1400-02 (discussing the extent of a prisoner's right to view evidence at a disciplinary hearing). The Court is persuaded by Respondent's argument that due to security and safety concerns, Petitioner had no right in this case to review the videotape of the incident.

Moreover, although Petitioner had no right to view the tape himself, he could have requested a staff representative, who then would have been able to review it. 28 C.F.R. § 541.14(b)(2). Petitioner, however, expressly waived his right to a staff representative at his DHO hearing. (ECF No. 12-1 at 27, Resp's Ex. 2c, Notice of Discipline Hearing Before the DHO); ECF No. 12-2 at 2, Resp's Ex. 2d DHO Report).

## 2. Petitioner's Request For the Court To Review the Videotape Must Be Denied

Petitioner requests that the Court review the videotape of the incident and conduct an *in camera* hearing. His request must be denied because it essentially is a request for the Court to reexamine the record, reassess the credibility of the witnesses, and re-weigh the evidence. Under the case law discussed below, inmates challenging prison disciplinary action are not entitled to such relief.

It is well settled that the decision of the DHO is entitled to considerable deference by a reviewing court and the decision must be upheld if there is "some evidence" to support it. Superintendent v. Hill, 472 U.S. 445, 454-55 (1985); Young, 926 F.2d at 1402-03 (applying Hill standard to federal prisoner's due process challenges to prison disciplinary proceedings). Once the reviewing court determines that there is at least "some evidence" to support the findings of the DHO, the court must reject the evidentiary challenge by the petitioner and uphold the finding of the DHO. Id. "Ascertaining whether [the] standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing the evidence." Id. at 455-56.

There can be no question that there is "some evidence" to support the DHO's decision in Petitioner's case.[4] The DHO relied upon the Incident Report; a memorandum submitted by a staff member who was present at the scene of the incident (Lisa McKenna); a memorandum submitted by D.J. Whitmore, who had reviewed the videotape; and, the SIS Report. The DHO also considered and rejected Petitioner's statement that he did not do anything. This Court has no authority to review her assessment of Petitioner's credibility. Hill, 472 U.S. at 455-56.

---

[4] Notably, Petitioner does not expressly challenge the weight and sufficiency of the evidence relied upon by the DHO to determine that he committed the prohibited acts as charged. If it is his intent to raise such a challenge, that challenge is denied because there is "some evidence" to support the DHO's decision.

11

As Respondent argues, Petitioner's request for the Court to review the videotape is essentially a request for the Court to re-weigh the evidence and make its own credibility determinations. However, the Supreme Court has established that this is not the role courts should take during review of prison disciplinary cases. Hill, 472 U.S. at 455-56. Thus, because the record evidence in this case establishes at least "some evidence" of Petitioner's involvement in the prohibited conduct, his request for the Court to review the videotape must be denied.

### III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that the petition for a writ of habeas corpus be denied.[5]

Pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, the petitioner must seek review by the district court by filing objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to do so will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: October 25, 2011

cc: The Honorable Sean J. McLaughlin
United States District Judge

---

[5] Section 102 of the Antiterrorism and Effective Death Penalty Act (28 U.S.C. § 2253(as amended)) codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. Federal prisoner appeals from the denial of a § 2241 habeas corpus proceeding are not governed by the certificate of appealability requirement. United States v. Cepero, 224 F.3d 256, 264-65 (3d Cir. 2000); 28 U.S.C. § 2253(c)(1)(B).

12